IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL RAY FORBES, <br> BOP Register No. 13302-078, <br><br> Plaintiff, <br><br> V. <br><br> R. ZOOK, ET AL., <br><br> Defendants. | § § § § § § § § § § § | <br><br><br><br><br> No. 3:22-cv-687-E-BN |

**SUPPLEMENTAL FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Michael Ray Forbes, a federal prisoner, initially brought this *pro se* lawsuit under the Federal Tort Claims Act, alleging that, during his transfer from FCI Seagoville to FMC Fort Worth in December 2020, the Federal Bureau of Prisons lost personal property of his valued at $2,090. *See* Dkt. No. 3. United States District Judge Ada Brown referred Forbes's lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference. And, on April 6, 2022, the undersigned entered findings of fact and conclusions of law recommending that the Court dismiss Forbes's claims under the FTCA for lack of jurisdiction [Dkt. No. 5] (the FTCA FCR).

Forbes then objected to the FTCA FCR and filed his one amended complaint allowed as a matter of course. *See* Dkt. Nos. 6, 7. Through both, he states his intent to bring claims under 42 U.S.C. § 1983 against the same individual federal defendants and based on the same underlying facts, but he now claims that his personal property was stolen, not lost. *See, e.g.*, Dkt. No. 7 at 4 ("The issue is

straightforward, either [the defendants] stole plaintiff's property or where is it?").

The undersigned therefore supplements the FTCA FCR by entering these findings of fact, conclusions of law, and recommendation that the Court should dismiss Forbes's claims under the Constitution with prejudice.

## Legal Standards and Analysis

"A plaintiff makes out a § 1983 claim if he 'shows a violation of the Constitution or of federal law, and then shows that the violation was committed by someone acting under color of state law.'" *Rich v. Palko*, 920 F.3d 288, 293-94 (5th Cir. 2019) (cleaned up and emphasis added; quoting *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008)); *accord Thurman v. Med. Transp. Mgmt., Inc.*, 982 F.3d 953, 956 (5th Cir. 2020). As against a federal officer or employee, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), first allowed "an implied damages remedy under the Constitution itself," *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017). But *Bivens*, unlike Section 1983, is not a Congressional statute that "entitles an injured person to money damages if [an] official violates his or her constitutional rights." *Abbasi*, 137 S. Ct. at 1854 ("Congress did not create an analogous statute for federal officials. Indeed, in the 100 years leading up to *Bivens*, Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government.").

And the United States Supreme Court "has approved of an implied damages remedy under the Constitution itself" only three times – in *Bivens*, to enforce "a damages remedy to compensate persons injured by federal officers who violated the

prohibition against unreasonable search and seizures" in violation of the Fourth Amendment; in *Davis v. Passman*, 442 U.S. 228 (1979), holding "that the Fifth Amendment Due Process Clause gave [a Congressman's administrative assistant] a damages remedy for gender discrimination"; and in *Carlson v. Green*, 446 U.S. 14 (1980), holding "that the Eighth Amendment Cruel and Unusual Punishments Clause gave [a prisoner] a damages remedy for failure to provide adequate medical treatment." *Abbasi*, 137 S. Ct. at 1854-55.

In *Abbasi*, the Supreme Court further "stressed that any extension of *Bivens* to new factual scenarios is now a '"disfavored" judicial activity.'" *Maria S. ex rel. EHF v. Garza*, 912 F.3d 778, 783 (5th Cir. 2019) (quoting *Abbasi*, 137 S. Ct. at 1857 (quoting, in turn, *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009))); *accord Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020) ("*Bivens* was the product of an '*ancien regime*' that freely implied rights of action. That regime ended long ago. Today, *Bivens* claims generally are limited to the circumstances of the Supreme Court's trilogy of cases in this area…." (citations omitted)), *cert. denied*, 141 S. Ct. 2669 (2021); *Byrd v. Lamb*, 990 F.3d 879, 881 (5th Cir. 2021) (per curiam) ("The Supreme Court has cautioned against extending *Bivens* to new contexts." (citing *Hernandez v. Mesa*, 140 S. Ct. 735, 744 (2020) (*Hernandez II*); *Abbasi*, 137 S. Ct. at 1861)); *Butler v. S. Porter*, 999 F.3d 287, 293 (5th Cir. 2021) ("Indeed, in recent decades, the Supreme Court has 'consistently refused to extend *Bivens* to *any* new context.'" (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001); citation omitted)).

So, as to whether Forbes may assert claims against the individual defendants

for alleged constitutional violations, the Court should consider the "two part inquiry for determining whether to allow a *Bivens* cause of action: (1) whether the instant case involves a 'new context' that is distinct from prior *Bivens* cases and (2) whether any 'special factors' preclude extending *Bivens* to this 'new context.'" *Maria S.*, 912 F.3d at 784 (citation omitted); *accord Oliva*, 973 F.3d at 441-42 ("Courts confronting *Bivens* claims generally 'must ask two questions. First, do [the plaintiff's] claims fall into one of the three existing *Bivens* actions? Second, if not, should we recognize a new *Bivens* action here?'" (quoting *Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019))); *Byrd*, 990 F.3d at 881 ("Only where a claim arises in a new context should courts then proceed to the second step of the inquiry, and contemplate whether there are 'any special factors that counsel hesitation about granting the extension.'" (quoting *Hernandez II*, 140 S. Ct. at 743)).

> "The proper test for determining whether a case presents a new *Bivens* context is" whether it is "different in a meaningful way from previous *Bivens* cases decided by" the Supreme Court. *Abbasi*, 137 S. Ct. at 1859. A meaningful difference may include the Constitutional right at issue, the statutory or other legal mandate under which the officer was operating, or the presence of potential special factors that previous *Bivens* cases did not consider. *Id.* at 1860. "[E]ven a modest extension is still an extension." *Id.* at 1864.

*Canada v. United States*, 950 F.3d 299, 307 (5th Cir. 2020) (citation modified).

In short, "the proper test is whether the case differs in a meaningful way from *Bivens*, *Davis*, or *Carlson*." *Id.* (citing *Abbasi*, 137 S. Ct. at 1859; *Loumiet v. United States*, 948 F.3d 376, 381-82 (D.C. Cir. 2020)). And, in practice, "[v]irtually everything else" – any case falling outside the specifics of these three cases – "is a 'new context.'" *Oliva*, 973 F.3d at 442 (citing *Abbasi*, 137 S. Ct. at 1865; *see also Byrd*, 990 F.3d at

883 (Willett, J., specially concurring) ("The *Bivens* doctrine, if not overruled, has certainly been overtaken." And, at least in this circuit, after *Oliva*, "'[v]irtually everything' beyond the specific facts of the *Bivens* trilogy 'is a "new context"' …. And new context = no *Bivens* claim." (footnote omitted)).[1]

The facts of this case, further set out in the FTCA FCR, meaningfully differ from the three cases where the Supreme Court "approved of an implied damages remedy under the Constitution itself." *Abbasi*, 137 S. Ct. at 1855. And, since this case presents a "next context," distinct from prior *Bivens* cases, the Court must "contemplate whether there are '<u>any</u> special factors that counsel hesitation about granting the extension.'" *Byrd*, 990 F.3d at 881 (quoting *Hernandez II*, 140 S. Ct. at 743; emphasis added); *see Butler*, 999 F.3d at 294 ("Importantly, '[e]ven before *Abbasi* clarified the special factors inquiry, we agreed with our sister circuits that the only relevant threshold – that a factor counsels hesitation – is remarkably low." (citation omitted)).

This "inquiry 'concentrate[s] on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of

---

[1] *See, e.g.*, *Cantú*, 933 F.3d at 422-23 ("Cantú purports to address the first question. And he thinks he's home free because his malicious-prosecution-type-claim alleges a violation of his Fourth Amendment right to be free from unlawful seizures – the same right recognized in *Bivens*. That's wrong. Courts do not define a *Bivens* cause of action at the level of 'the Fourth Amendment' or even at the level of 'the unreasonable-searches-and-seizures clause.' …. [But, w]hat if a plaintiff asserts a violation of the same clause of the same amendment in the same way? That still doesn't cut it. …. [In sum, b]y any measure, Cantú's claims are meaningfully different from the Fourth Amendment claim at issue in *Bivens*. He does not allege the officers entered his home without a warrant or violated his rights of privacy.").

allowing a damages action to proceed.'" *Butler*, 999 F.3d at 294 (quoting *Abbasi*, 137 S. Ct. at 1857-58). That is, "[t]he 'most important' *Bivens* question is 'who should decide whether to provide for a damages remedy, Congress or the courts?'" *Watkins v. Three Admin. Remedy Coordinators of Bureau of Prisons*, 998 F.3d 682, 685 (5th Cir. 2021) (quoting *Hernandez II*, 140 S. Ct. at 750). And, "'[w]hen a party seeks to assert an implied cause of action under the Constitution,' as in this case, 'separation-of-powers principles ... should be central to the analysis.'" *Byrd*, 990 F.3d at 882 (quoting *Abbasi*, 137 S. Ct. at 1857).

The administration of the federal prison system qualifies as a special factor that should prevent the Court's creating an implied cause of action under *Bivens* for the context of this case. *See Petzold v. Rostollan*, 946 F.3d 242, 248 n.2 (5th Cir. 2019) ("[W]e are unlikely to imply a *Bivens* remedy for this new context as 'special factors' counsel hesitation in federal prison administration." (citation omitted)); *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 524 (6th Cir. 2020) ("'[L]egislative action suggesting that Congress does not want a damages remedy' counsels against judicial do-it-yourself projects. Congress paid close attention to inmate constitutional claims when it enacted the [PLRA]. The Act 'does not provide for a standalone damages remedy against federal jailers.'" (quoting *Abbasi*, 137 S. Ct. at 1865; citations omitted)); *Watkins v. Carter*, No. 20-40234, 2021 WL 4533206, at *2 (5th Cir. Oct. 4, 2021) (per curiam) ("[T]here are special factors that counsel hesitation. The existence of the Federal Tort Claims Act weighs against inferring a new cause of action. *See Cantú*, 933 F.3d at 423 (citing 28 U.S.C. § 2680(h)). Additionally, the existence of the

BOP's Administrative Remedy Program provides an alternative method of relief to *Bivens* actions. *Malesko*, 534 U.S. at 74; 28 C.F.R. § 542.10 (2001)." (citations modified)).

Accordingly, because this "case is a new context and there are special factors that counsel hesitation, [Forbes] does not have a viable *Bivens* claim against the [individual defendants]." *Watkins*, 2021 WL 4533206, at *3.

## Recommendation

For the reasons set out in the April 6, 2022 findings of fact, conclusions of law, and recommendation, the Court should dismiss Plaintiff Michael Ray Forbes's claims under the Federal Tort Claims Act for lack of jurisdiction, and, insofar as Forbes has amended his claims to allege constitutional violations, *see* Dkt. Nos. 6, 7, the Court should dismiss those claims with prejudice for the reasons explained above.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the

factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 22, 2022

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE